Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 26 2014, 5:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY O'CONNOR**
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RITA THOMPSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1305-CR-454 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy Jones, Judge
Cause No. 49F08-1205-FD-032595

**February 26, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Rita Thompson ("Thompson") was convicted in Marion Superior Court of Class D felony resisting law enforcement and was found to be an habitual offender. Thompson appeals her conviction and argues that the evidence is insufficient to establish that she "knowingly or intentionally" fled from a law enforcement officer.

We affirm.

## Facts and Procedural History

On May 15, 2012, Thompson arrived at her sister's home in Indianapolis. Family members observed that Thompson, who suffers from mental illness, had a "wild look" and was not acting right. Due to her past observations of Thompson, Thompson's sister believed that Thompson's symptoms were manifestations of her mental illness.

Because of Thompson's mental state, her family did not want her to drive. They called Thompson's mental health treatment provider, but the health provider told them to call 911. Indianapolis Metropolitan Police Officer Kari Pennington ("Officer Pennington") responded to the 911 dispatch and proceeded to Thompson's location.

Officer Pennington arrived at Thompson's sister's home, turned on her emergency lights and parked on the street near the driveway. She observed a group of five people standing outside near the house. A woman, who she later learned was Thompson, ran away from the group and got into a vehicle. Thompson pulled out of the driveway, drove around Officer Pennington's squad car, and proceeded east on 79th Street at a high rate of speed.

Officer Pennington activated her siren and followed Thompson. The officer was just behind Thompson and observed her run through a stop sign. Approximately one-half

2

of a mile from her sister's home, Thompson pulled her car over. Thompson was compliant with Officer Pennington after she stopped her vehicle, placing her hands outside the window of her vehicle at Officer Pennington's request. Thompson was placed under arrest, and asked, "[W]hat did you get me for? . . . [F]leeing?" Tr. p. 22; see also Tr. p. 41. Thompson appeared coherent to Officer Penningtion and answered the officer's questions appropriately. Tr. pp. 23, 26.

As a result of the incident, Thompson was charged with Class D felony resisting law enforcement. The State also alleged that she was an habitual offender. A bench trial was held on May 2, 2013. At trial, Thompson testified that she was aware of the police officer's arrival at her sister's house and heard the police siren. Tr. p. 40. Thompson knew she was on 79th Street, and testified that when Officer Pennington arrived, she pulled out of the driveway and "then [Pennington] started chasing" her. Id. The trial court determined that Thompson "knowingly or intentionally" fled from Officer Pennington, and she was found guilty as charged. Tr. pp. 46-47.

Thompson was ordered to serve six months for the Class D felony resisting law enforcement conviction, and the trial court enhanced that sentence by one and one-half years for the habitual offender adjudication. Thompson was ordered to serve her sentence through the Marion County Community Corrections Mental Health Component with placement in the Addiction Intervention Component. Thompson now appeals.

**Standard of Review**

When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Chappell v. State, 966

3

N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing <u>McHenry v. State</u>, 820 N.E.2d 124, 126 (Ind. 2005)), <u>trans. denied</u>. Rather, we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. <u>Id</u>. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. <u>Baumgartner v. State</u>, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

**Discussion and Decision**

Thompson argues that she was unable to form the requisite intent to commit resisting law enforcement because she suffers from mental illness. A person who knowingly or intentionally flees "from a law enforcement officer after the officer has, by visible or audible means identified himself and ordered the person to stop" commits resisting law enforcement, which is a Class D felony if the person uses a vehicle to commit the offense. Ind. Code § 35-44-3-3.[1]

A person engages in conduct "intentionally" if, when she engages in the conduct, it is her conscious objective to do so. Ind. Code § 35-41-2-2(a). A person engages in conduct "knowingly" if, when she engages in conduct, she is aware of a high probability that she is doing so. I.C. § 35-41-2-2(b). Criminal intent can be established by circumstantial evidence and inferred from the defendant's conduct and the natural and

---

[1] The relevant statutory provision was recodified at Indiana Code section 35-44.1-3-1, effective July 1, 2012. We cite to the statutory provision in effect on the date of the alleged offense.

4

usual sequence to which such conduct reasonably points. Boring v. State, 982 N.E.2d 1055, 1058 (Ind. Ct. App. 2013).

Thompson's own testimony supports the trial court's determination that Thompson "knowingly or intentionally" fled from Officer Pennington. Thompson testified that she was aware of the police officer arriving at her sister's house and heard the police siren. Tr. p. 40. Thompson knew she was on 79th Street, and testified that when Officer Pennington arrived, she pulled out of the driveway and "then [Pennington] started chasing" her. Id.

After the one-half mile chase, Thompson stopped her vehicle. Officer Pennington then ordered Thompson to place her hands outside the window of her vehicle, and Thompson complied. Thompson was also compliant with Officer Pennington's instructions thereafter. Thompson was placed under arrest, and asked, "what did you get me for? . . . [F]leeing?" Tr. p. 22; see also Tr. p. 41. Thompson appeared coherent and answered Officer Pennington's questions appropriately. Tr. pp. 23, 26. This evidence supports the trial court's finding, that despite her mental illness, Thompson knowingly or intentionally failed to stop her vehicle after Officer Pennington activated her sirens. For all of these reasons, we conclude that the evidence is sufficient to support Thompson's Class D felony resisting law enforcement conviction.

Affirmed.

BRADFORD, J., and PYLE, J., concur.